IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLYDIE J. CRAWFORD,

        Plaintiff,

v.                                            CIV 10-0926 KBM/LFG

RICHARD BARNES,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DISMISSING CLAIM FOR PUNITIVE DAMAGES

THIS MATTER is before the Court on Defendant's Motion For Summary Judgment on Punitive Damages. *See Doc. 37.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. Having carefully reviewed the parties submissions and relevant authorities I find the motion is well-taken and will therefore grant it.

### I.  Factual Background

This litigation arises out of a collision between Plaintiff, a skier, and Defendant, a snowboarder, at Taos Ski Valley on January 21, 2010. Plaintiff suffered a broken left hip. He seeks damages, including past and future medical expenses, lost income, pain and suffering, and compensation for an alleged

reduction in his life expectancy.

The facts are undisputed. Defendant, having skied or snowboarded at Taos Ski Valley every year since 2001 or 2002, was familiar with the resort, including Rubezahl Trail, where the collision occurred. *See Doc. 45* at 2, ¶¶ 4-5; *Doc 49* at 2, ¶ 1 (admitting same). A "slow skiing" sign is posed on Rubezahl Trail. *See Doc. 45* at 2, ¶ 8; *Doc. 49* at 2 (admitting same).

Defendant estimates he was going "reasonably slow" just prior to the collision, "certainly below ten miles an hour." *See Doc. 49* at 2 (citing *Doc. 45-2* at 29:15-18). According to one witness, Ski Patrolman John C. Hunt, Defendant was also seeking to maintain his momentum at the time of the collision, "because it's a flat part of the run. Your speed is decreasing really rapidly there. Snowboarders have a harder time because it acts really flat beyond, and then you're walking." *See Doc. 45-4* at 25:24-26:4. Plaintiff was "skiing slowly (about the speed of a fast walk) close to the right edge of the road (less than 10 feet) looking for the bridge. Just as [he] saw the bridge and was turning to the right, out of the traffic lane to stop, Professor Barnes hit [him] ..." *Doc. 37* at 2, ¶ 2; *Doc. 45* at 1 (admitting same).

From the time the Defendant first saw Plaintiff until the accident, it was "five, eight, ten seconds, perhaps." *See Doc 45-2* at 28:13-16. In that time, the

2

Defendant testified that in order to avoid Plaintiff, he widened his turns, slowed his board, moved to Plaintiff's right, moved further to Plaintiff's right, and ultimately "threw [him]self to the ground at the last moment." *See Doc. 45* at 3, ¶ 30; *Doc 45-2* at 36:5-19. Plaintiff did not see or hear the Defendant prior to the collision. *See Doc. 37* at 2, ¶¶ 3-41; *Doc. 45* at 1 (admitting same[1]).

The Defendant should be held liable for punitive damages, in Plaintiff's view, because he "exhibited reckless or utter indifference to the safety of Mr. Crawford by not taking adequate measures to stop or avoid Mr. Crawford." (Docket No. *45* at 6. First, Plaintiff contends that the Defendant failed to comply with the Taos Ski Valley Responsibility Code, which provides in relevant part:

- Always stay in control and be able to stop or avoid other people or objects.

- People ahead of you have the right of way. It is your responsibility to avoid them.

- Observe all posted signs and warnings.

*See Doc. 45* at 3-4, ¶ 22. Plaintiff also points to the comparison of testimony from four witnesses who say they heard the Defendant admit fault and the Defendant's

---

[1] Although Plaintiff's Response Brief purports to dispute Fact 4 (stating that Plaintiff did not hear the Defendant prior to the collision), it is clear from the Response that Plaintiff intends to dispute Fact 5 (regarding Plaintiff's basis for seeking punitive damages). Moreover, I find that Fact 4 is a fair restatement of Plaintiff's deposition testimony. *See Doc. 37* at 2, ¶ 4 & Ex. C at 19:5-9.

3

more recent denial that he admitted fault. *See id.* at 7 ("[A] jury could conclude that Defendant Barnes is lying in an attempt to avoid responsibility.").

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED.R.CIV.P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED.R.CIV.P. 56(c)(1)(B). *See also Medlock v. United Parcel Service, Inc.*,

608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. FED.R.CIV.P. 56(c)(2).

The court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. FED.R.CIV.P. 56(e). The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. FED.R.CIV.P. 56(f).

### III.   Analysis

In a diversity action such as this, New Mexico substantive law applies. *See, e.g., Smith v. Ingersoll-Rand Co.*, 214 F.2d 1235, 1248-49 (10th Cir. 2000) (applying New Mexico substantive law, including punitive damages law, in a products liability action where jurisdiction was founded on diversity); *Vigil v. Burlington N. and Santa Fe Ry. Co.*, 521 F.Supp.2d 1185, 1221 (D.N.M. 2007)

(applying New Mexico substantive law on punitive damages in a case where jurisdiction was founded on diversity).

"New Mexico law permits an award of punitive damages 'to punish and deter persons from conduct manifesting a culpable mental state.'" *Vigil*, 521 F.Supp.2d at 1221 (quoting *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 308 (1994)). To demonstrate a defendant's "culpable mental state," a plaintiff must show that the defendant's actions were "malicious, willful, reckless, wanton, fraudulent, or in bad faith." *See* U.J.I. 13-1827, NMRA 2011. Negligence, or even gross negligence, is not sufficient to support a punitive damages award. *See id.*, committee cmt. ("Following the decision in *Paiz*, the committee recommended that gross negligence be removed as a basis for punitive damages in both contract and tort cases. This recommendation was adopted by the New Mexico Supreme Court in 1998.").

In the present case, neither fraud nor bad faith even arguably apply. Moreover, because there is no evidence of an intentional wrongful act, the Defendant's conduct in this case was not malicious. *See* U.J.I. 13-1827, NMRA 2011 ("Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful."). Further, I find no evidence to indicate that the Defendant acted willfully, "with knowledge that harm may result[;]" recklessly,

"with utter indifference to the consequences[;]" or wantonly, "with utter indifference to or conscious disregard for a person's safety." *See id.*

The Defendant may have been negligent. At this juncture, it appears that the evidence is such that a reasonable jury could resolve the issue either way. There is no dispute, however, that the Defendant went to some effort, albeit without success, to avoid the collision with Plaintiff. Under these circumstances, I cannot find that the Defendant acted with a culpable state of mind sufficient to support punitive damages.

Finally, I am unconvinced that the undisputed facts support the conclusion that Defendant displayed a "cavalier attitude" toward the dangerous activity of skiing. *See Doc. 45* at 5-6 (citing *Clay v. Ferrelgas, Inc.*, 881 P.2d 11 (1994)). Similarly, the required "culpable state of mind" showing cannot lie in the Defendant's recent denial that he had ever accepted responsibility for the collision. Even if Plaintiff is correct and "Defendant Barnes is lying in an attempt to avoid responsibility," *see Doc. 45* at 7, this is not evidence of the Defendant's state of mind at the time of the collision and is therefore irrelevant to the question of punitive damages.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Claim for Punitive Damages *(Doc. 37)* is **granted**. Plaintiff's claim for punitive damages is therefore dismissed with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent of the Parties